coal; that the boy, up to the time he was placed on the stand (as a witness in this case, presumably), had never, to any one in the district attorney's office, made any statement other than that which he made before the grand jury, and which was, in substance, as he had asked the boy while testifying as a witness in this case. The boy had denied that he so testified before the grand jury. The claim of the district attorney was that the boy testified before the grand jury that his bed was in the same room they choked his father in; that Ledwon and Zawaczki were choking him, and his mother was kneeling on his breast. It was stated by the district attorney, as a fact, that the boy testified before the grand jury to the facts as he (the district attorney) claimed them to be. That statement by the district attorney contains the only language used by any person on the trial indicating that Anna Ledwon actively participated in the killing of her husband. The fact indicated by the statement of the district attorney as to Anna Ledwon's active participation in the crime was disputed by the boy, who was the only witness who spoke concerning it. His evidence is that the killing was done by Joseph and Zawaczki, and that his mother took no active part in it. The statement so made by the district attorney, in my judgment, may well have been, if it was not in fact, necessarily prejudicial to the defendants. People v. Greenwall, 115 N. Y. 526, 22 N. E. 180; People v. Wood, 126 N. Y. 269, 27 N. E. 362. If it should be held eventually in this case that the boy Wladeslaus is shown by his testimony to be incompetent as a witness, for lack of understanding and intelligence, the result would be the same as it must be as the case stands. A human being should not be deprived of liberty on such testimony as that given by this boy, and it is conceded that without it a conviction would not have been warranted. See People v. Quick (Mich.) 25 N. W. 302; Hardtke v. State (Wis.) 30 N. W. 726.

These views necessitate a reversal of the judgment of conviction, as to both of the defendants, without reference to the effect, if any, which ought to be given to the affidavits of good character used upon the motion for a new trial on the ground of newly-discovered evidence.

(15 Misc. Rep. 260.)

KING v. LEHIGH VALLEY R. CO.

(Superior Court of Buffalo, General Term. December 23, 1895.)

PLEADING—CONNECTING DEFENDANT WITH CAUSE OF ACTION.

A complaint by the widow of an employé of defendant, alleging the establishment by defendant and its employés, and their maintenance by contributions, of a fund for the benefit of widows and employés accidentally killed while in the employment, and that the fund was, by agreement of all parties interested in it, kept in the custody of an officer of defendant, and managed by him in connection with a representative of the employés, and that moneys from the fund can be drawn only by the joint action of such officer and such representative, shows no cause of action against defendant for a share of such fund, the possession of the officer not being defendant's possession.

Action by Lucinda King against the Lehigh Valley Railroad Company. Defendant demurs to the complaint. Sustained.

Argued before TITUS, C. J., and WHITE and HATCH, JJ.

Charles J. Oishei, for plaintiff.
Martin Carey, for defendant.

WHITE, J.    The complaint states in substance: (1) That the defendant is a foreign railroad corporation operating a railroad in this city. (2) That the defendant has, in connection with certain of its employés, established, and with them maintains by voluntary contributions made by it and its said employés, a fund for the benefit of the widow of an employé who had subscribed to the fund and is accidentally killed while in the discharge of his duty. (3) That the plaintiff's husband was accidentally killed while in the discharge of his duty, and had subscribed to the fund. (4) That the defendant was a contributor to the fund in an amount equal to that contributed by all of its employés. (5) That the fund in question was, by agreement of all parties interested in it, kept in the custody of an officer of the defendant, and such officer, in connection with a representative of and chosen by the class of employés to which the plaintiff's husband belonged (in so far as the plaintiff is interested in it), managed the fund, and moneys from the fund could be drawn only by the joint action of such officer of the defendant and such representative. (6) That by the terms of the agreement under which the fund in question is created and distributed the plaintiff is entitled to three-fourths of the amount of her husband's contribution for every working day for two years from the time of his death, to be paid monthly, provided she remains unmarried during that time. (7) That the plaintiff's husband was killed April 5, 1894, and had contributed one day's wages to the fund. It does not state what his wages were, or how much he contributed. The relief demanded is that the plaintiff receive three-fourths of the amount of her husband's contribution to the fund for every working day, to be paid to her monthly from the time of her husband's death, with costs.

The action seems to have been commenced about July 27, 1894. Assuming that the facts stated in the complaint would constitute a cause of action against the custodian of the fund in question, and entitle the plaintiff to a judgment either for a certain sum, or establishing her right to receive a certain sum for two years from the time her husband was killed, providing she remains unmarried, to my mind there is nothing whatever in the complaint showing a cause of action against the defendant. The defendant neither owns, controls, nor manages the moneys constituting this fund. There is no allegation that the defendant has any money belonging to anybody in its possession. The complaint shows that the money, if there is any, is held and managed by an officer of the defendant, to be sure, but that he cannot lawfully pay it out except upon an order in which a chosen representative of the class of employés to which the plaintiff's husband belonged shall join in giving it. If the condition of things provided for by the tenth clause of Exhibit A attached to the com-

plaint were shown to exist, a question very different from the one we are called upon to consider would be raised. Possibly, under such a state of affairs, if the defendant refused to recognize a just claim upon the fund, it might be said that, having exercised its right to take exclusive management and control of the fund, it should be held bound to distribute it in accordance with the provisions of the law; but until the defendant assumes that attitude it certainly cannot be said that it is liable to any contributor for the failure of the custodian of the fund agreed upon by all interested in it to discharge his duty. The plan under which the fund is created and disbursed does not take any notice of the relations which may happen to exist between a contributor and his family, except that the beneficiary must be the contributor himself, and in case of his death his widow is entitled to the benefits. The question, therefore, as to whether or not the plaintiff's husband was living with or supporting or was under obligations to support her at the time of his death, would not seem to be material. The obligation on the part of those controlling it to pay from the fund in this case is plain, if there is money in their hands in which the plaintiff's husband was interested at the time of his death.

The demurrer should be sustained, with leave to the plaintiff to amend her complaint. All concur.